7 F.3d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore TYLER, Defendant-Appellant.
 No. 92-5313.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: February 25, 1993.
Decided: September 30, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Orangeburg. Charles E. Simons, Jr., Senior District Judge. (CR-91-359)
 Parks N. Small, Federal Public Defender, Columbia, South Carolina, for Appellant.
 John S. Simmons, United States Attorney, Eric Wm. Ruschky, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WIDENER and HALL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Theodore Tyler was convicted of being a felon in possession of a firearm (18 U.S.C.A. §§ 922(g), 924(a), 3147) (West Supp. 1992) (Count One), and acquitted of possessing an unregistered sawed-off shotgun (26 U.S.C.A. §§ 5861(d), 5871 (West 1989), 18 U.S.C.A. § 3147 (West Supp. 1992)) (Count Two). He appeals his sentence, alleging that the district court erred in departing upward six offense levels for possession of the sawed-off shotgun without justification, and in departing upward an additional two levels because another of the weapons possessed was semi-automatic. He also argues for the first time that the application of guideline section 2J1.7[1] violates 18 U.S.C.A. § 3147 by creating disparity in sentencing. We find that Tyler has waived his disparity argument by not raising it in the district court, United States v. Davis, 954 F.2d 182 (4th Cir. 1992),[2] and affirm the sentence.
 
 
 2
 When Tyler was arrested at his legal residence by state authorities for threatening two sheriff's deputies, a semi-automatic pistol and a revolver were in the bedroom where he was found. A rifle and an Iver Johnson 16 gauge shotgun were in the bedroom across the hall under a mattress. At his trial, both Tyler and his foster son, Steve Evans, testified that Evans lived in the house and owned the guns, while Tyler lived in a nearby apartment which was also on his property. However, there was contradictory testimony from Evans's girlfriend, who said that Tyler lived in the house and Evans lived with her in the apartment.
 
 
 3
 After Tyler's conviction on Count One, the government provided the probation officer with affidavits from two witnesses who also contradicted Evans's testimony. One of them said he had pawned his Iver Johnson 16 gauge sawed-off shotgun to Tyler and had not yet gotten it back. The probation officer recommended an adjustment for obstruction of justice in suborning perjury and advised that the government would seek a six-level upward departure on the ground that Tyler had actually possessed the unregistered sawed-off shotgun. In a pre-sentencing motion, the government also asked for a two-level upward departure because Tyler had possessed a semi-automatic handgun.
 
 
 4
 At the sentencing hearing, Tyler objected to the use of the affidavits without an opportunity to confront the witnesses. The district court agreed to continue the hearing so that the witnesses could be produced, but decided to resolve the remaining issues. The district court found that Evans had testified falsely at trial and that a preponderance of the evidence showed that Tyler had possessed the sawed-off shotgun. The court departed upward by six levels to eighteen, which would have been Tyler's base offense level if he had been convicted of possession of the shotgun. The court also granted a two-level departure for the possession of a semi-automatic hand gun. At this point, Tyler and the government agreed that the government would not seek a further enhancement for obstruction of justice, so that the sentencing could be concluded in one day.
 
 
 5
 We first find that the six-level increase was a departure, not an increase made pursuant to section 2K2.1, even though the district court referred to it an as enhancement. It is clear from the record that the district court was granting the motion for a departure made by the government and discussed at some length during the hearing. We review the departure under the test set out in United States v. Summers, 893 F.2d 63 (4th Cir. 1990), and we find that the court did not err in deciding that Tyler's possession of the shotgun was an aggravating factor. The guideline itself identifies possession of a sawed-off shotgun as a significant aggravating factor by providing a higher base offense level for such an offense. We further find that the district court did not clearly err in finding that Tyler possessed the shotgun based on rejection of Evans's credibility and the fact that the shotgun was discovered in Tyler's house while he was there. The extent of the departure was appropriate because it was the increase provided by the guideline.
 
 
 6
 In making the two-level departure for possession of a semiautomatic pistol, the district court provided no explanation of why possession of a semi-automatic weapon is an aggravating factor or why this factor was of sufficient importance in this case to justify a departure. However, the government's Motion for Upward Departure cited statistics from a report issued by the Bureau of Alcohol, Tobacco and Firearms which show that semi-automatic weapons rather than revolvers are disproportionately used to commit crimes, and argued that semi-automatic weapons are more likely to be so used because they are small, flat, and readily concealable. We recognize that semi-automatic weapons often will fire two or three times as many rounds as other weapons such as revolvers before reloading is necessary, and are therefore more dangerous. These factors support the district court's finding that possession of the semi-automatic pistol can be an aggravating factor.[3] See United States v. Medina-Gutierrez, 980 F.2d 980, 984 (5th Cir. 1992) (semi-automatic handguns are military-type weapons warranting departure; remanded on other grounds); United States v. Sweeting, 933 F.2d 962, 966 (11th Cir. 1991) (dangerousness of weapon a factor supporting departure); United States v. Thomas, 914 F.2d 139, 142 (8th Cir. 1990) (same; 9mm pistol and AK47); United States v. Robinson, 898 F.2d 1111, 1118 (6th Cir. 1990) (dangerousness of two Tech 9 pistols valid factor for departure).
 
 
 7
 In Tyler's case, as the government's motion emphasizes, the search of his house was carried out because he had threatened two people with a gun earlier that day. Therefore, the district court's implicit finding that the possession of the semi-automatic weapon was of sufficient importance in this case to justify a departure and the increase of two levels was not an abuse of discretion. We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov. 1991)
 
 
 [2]
 We find no plain error in the application of section 2J1.7
 
 
 [3]
 Although the government argues that possession of a semi-automatic warrants a departure under guideline section 5K2.6, p.s., that section does not support a departure when the offense itself is possession of a firearm. See United States v. Medina-Gutierrez, 980 F.2d 980 (5th Cir. 1992)