**UNITED STATES of America, Appellee,**

v.

**Robert J. RIDEOUT, Defendant–Appellant.**

**No. 1364, Docket 93–1007.**

United States Court of Appeals, Second Circuit.

Argued April 27, 1993.

Decided Aug. 4, 1993.

Paul S. Volk, Burlington, Vt., for defendant-appellant.

William Darrow, Asst. U.S. Atty. (Charles A. Caruso, U.S. Atty., David V. Kirby, Chief, Crim. Div., Burlington, Vt., on the brief), for appellee.

Before: NEWMAN, Chief Judge, and LUMBARD and MAHONEY, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal presents the issue whether two convictions for crimes committed at different locations within a short period of time qualify as separate offenses for purposes of triggering the mandatory minimum sentencing provision of the Armed Career Criminal Act, 18 U.S.C. § 924(e) (1988 & Supp. III 1991) ("the ACCA"). The issue arises on an appeal by Robert J. Rideout from the December 29, 1992, judgment of the District Court for the District of Vermont (Fred I. Parker, Chief Judge) sentencing him to fifteen years' imprisonment, the mandatory minimum under the ACCA, for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (1988). We affirm.

Background

On July 29, 1990, Rideout and an accomplice committed an armed robbery of a Vermont gas station during which they discussed killing the attendant. For this crime, Rideout pled guilty to violating section 922(g)(1), which ordinarily carries a maximum sentence of ten years and no mandatory minimum. *See* 18 U.S.C. 924(a)(2) (Supp. III 1991). The primary issue at sentencing was whether Rideout had the requisite three prior convictions to trigger the ACCA's mandatory minimum.

Rideout had been convicted of an armed robbery offense committed on July 9, 1979; he concedes that this conviction qualifies under the ACCA. The issue at sentencing on the current charge was whether two other prior offenses should be counted as one offense for purposes of the ACCA. On June 7, 1979, Rideout and four accomplices broke into several residences located in neighboring counties of northwestern Vermont. Rideout was twice convicted of Breaking and Entering—Daytime. The offenses occurred at one residence in Chittenden County and another in Franklin County; these residences are approximately twelve to thirteen miles apart, and the driving time between them is twenty to thirty minutes. Rideout contended in the

District Court, and we accept as true for purposes of this appeal, that the June 7, 1979, offenses were committed as part of a "crime spree" uninterrupted by any period of non-criminal activity and that he and the others traveled from one residence to the other carrying the stolen items. Nevertheless, the District Court ruled that the two convictions for the two June 7, 1979, offenses counted separately for purposes of the ACCA, and sentenced Rideout to that statute's fifteen-year mandatory minimum.

Discussion

The Armed Career Criminal Act provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, *committed on occasions different from one another,* such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

18 U.S.C. § 924(e)(1) (1988) (emphasis added). Rideout argues that, because his acts of June 7, 1979, were part of a single "crime spree," *i.e.,* they occurred a short time apart and were not separated by any intervening non-criminal activity, they were not sufficiently distinct to qualify as offenses "committed on occasions different from one another." He also contends that he is not the type of person at whom the statute is primarily directed, that is, a criminal who repeatedly goes to prison and who commits a crime each time he gets out. *See United States v. Towne,* 870 F.2d 880, 891 (2d Cir.) (discussing testimony by Assistant Attorney General Stephen S. Trott before House Judiciary Committee, emphasizing purpose of ACCA), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989).

We have previously defined the outer boundaries of the ACCA. First, there is no requirement that the predicate offenses be separated by convictions. Such a requirement has been advanced by a plurality of the Third Circuit's in banc court in *United States v. Balascsak,* 873 F.2d 673 (3d Cir.1989) (in banc) (construing predecessor to section 924(e)). After an extensive review of the

legislative history, the plurality concluded that a defendant must have been convicted twice before he committed his third predicate offense in order to be eligible for the mandatory minimum. *Id.* at 681. In dicta, the plurality went further and stated that "the most reasonable interpretation" would also be to require that the first conviction occur before the second crime was committed. *Id.* at 682. Under this interpretation, the statute would cover only those career criminals who have been through a "revolving door" and who are "three-time loser[s]." *Id.* A later Third Circuit panel rejected the plurality's dicta. *See United States v. Schoolcraft,* 879 F.2d 64, 71–74 (3d Cir.), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989). We also rejected it, *see United States v. Mitchell,* 932 F.2d 1027, 1028 (2d Cir.1991), as have most other circuits, *see United States v. Brady,* 988 F.2d 664, 667 (6th Cir.1993) (in banc) (collecting cases), *petition for cert. filed* (June 21, 1993) (No. 92–9206).

At the other end of the spectrum, convictions stemming from the same "criminal episode" are combined for purposes of the ACCA. In *Towne,* we considered section 924(e)(1) prior to the 1988 amendment, which added the phrase "committed on occasions different from one another." Towne had kidnapped and raped a victim in 1976; in 1983, he had kidnapped and raped another victim. Each episode resulted in conviction on two counts for a total of four convictions. We declined to read the ACCA so literally as to require a minimum sentence for all defendants who technically had three or more prior convictions; instead, we agreed with the other circuits that had considered the issue and held that the relevant unit for triggering the mandatory minimum is the number of "criminal episodes" during which the convictions occurred. *Towne,* 870 F.2d

at 889–91. With the 1988 amendment, Congress codified this construction. *See* 134 Cong.Rec. 13,782–83 (1988).

Applying the "criminal episode" test to Towne, we ruled that, because each pair of his kidnapping and rape offenses was part of a prolonged attack against one victim, Towne had committed only two predicate offenses. *Towne,* 870 F.2d at 891. In so holding, we distinguished *United States v. Wicks,* 833 F.2d 192, 193 (9th Cir.1987), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988), and *United States v. Greene,* 810 F.2d 999, 1000 (11th Cir.1986), as cases in which "a convicted defendant had committed separate crimes against *separate victims* in *separate locations.*" *Towne,* 870 F.2d at 891 (emphasis added).

The defendant in *Wicks* had committed two burglaries on the same night at different locations. The Ninth Circuit counted each of these convictions as predicate offenses under the predecessor to section 924(e). *Wicks,* 833 F.2d at 193–94. That Court reaffirmed *Wicks* under section 924(e) after the 1988 amendment. *See United States v. Antonie,* 953 F.2d 496, 498–99 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992) (holding that two robberies committed approximately forty minutes apart at different locations were separate predicate offenses).

Several other circuits have reached a similar result applying the amended statute. *See Brady,* 988 F.2d at 668–70 (ruling that two robberies of different victims at different locations separated by thirty to forty-five minutes were distinct criminal episodes);[1] *United States v. Tisdale,* 921 F.2d 1095, 1098–99 (10th Cir.1990) (holding that three burglaries committed "successively" during one night at different stores in same mall are separate and distinct episodes), *cert. denied,* —— U.S.

---

1. The dissenters in *Brady* suggested a test focusing not only on whether the offenses involved different victims, locations, and times, but also on the continuity of the defendant's actions and on the premeditation of the defendant prior to undertaking any of those crimes. 988 F.2d at 677 (Jones, J., dissenting). The focus on the defendant's premeditation seems more relevant to the inquiry whether the offenses were part of a single common scheme or plan than whether the offenses were committed on a single occasion.

While both inquiries are pertinent to determining whether a defendant qualifies as a career offender under the Guidelines, *see United States v. Butler,* 970 F.2d 1017, 1023–27 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992); *United States v. Chartier,* 970 F.2d 1009, 1015–16 (2d Cir.1992), the ACCA sentencing provision turns only on whether the offenses were committed on a single "occasion." *See generally United States v. Maxey,* 989 F.2d 303 (9th Cir.1993).

——, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991); *United States v. Washington*, 898 F.2d 439, 440–42 (5th Cir.) (assuming that crime spree counted as a single conviction but finding separate and distinct episodes where defendant robbed same clerk at all-night convenience store twice within a few hours), *cert. denied*, 498 U.S. 842, 111 S.Ct. 122, 112 L.Ed.2d 91 (1990); *United States v. Schieman*, 894 F.2d 909, 910–13 (7th Cir.) (finding separate and distinct episodes where defendant committed a burglary and several minutes later, down the street, assaulted a pursuing officer), *cert. denied*, 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990).

The present case is easier than both *Schieman*, where the second offense was committed while fleeing from the location of the first offense, and *Tisdale*, where the offense locations were very close. Here, Rideout was not being pursued for his initial offense when he committed the later offense, and he traveled a significant distance between the two offenses during which time he could have chosen to end his criminal activity. Thus, following the dicta in *Towne*, we hold that Rideout's two Breaking and Entering—Daytime convictions for offenses committed against different victims separated by at least twenty to thirty minutes and twelve to thirteen miles qualify as offenses "committed on occasions different from one another" for purposes of section 924(e). While Rideout's assertion that his criminal activity was "uninterrupted" might be significant under different circumstances, under the situation presented here, that assertion does not turn what otherwise would be two "occasions" into one.

Finally, we reject Rideout's claim that the Government presented insufficient evidence to demonstrate that the triggering offenses were distinct. The District Court had the certified records of the prior state convictions, and the Government introduced evidence of the distance and travel time between the two homes.

The judgment of the District Court is affirmed.