10-2381 (L)
United States v. Gonzalez

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of October, two thousand eleven.

PRESENT: DENNIS JACOBS,
                 <u>Chief Judge</u>,
      PETER W. HALL,
      GERARD E. LYNCH,
                 <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

      *Appellee*,

      -v.-                             10-2381(L)
                                           10-2945(Con)

ROBERT ANTHONY GONZALEZ, MARK FRANCO,

      *Defendants*,

RASHEEM RICHARDSON, KHALIL WILLIAMS,

      *Defendants-Appellants*.

- - - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT RASHEEM RICHARDSON:**

Louis R. Aidala
New York, NY

**FOR APPELLANT KHALIL WILLIAMS:**

Bridget M. Rohde,
Mintz Levin Cohn Ferris Glovsky
and Popeo P.C.
New York, NY

**FOR APPELLEE:**

Jillian B. Berman (Marissa Molé,
Michael D. Maimin, <u>on the
brief</u>), Assistant United States
Attorney, *for* Preet Bharara,
United States Attorney,
Southern District of New York,
New York, NY

Appeal from judgments of the United States District Court for the Southern District of New York (Jones, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the district court's judgments are **AFFIRMED.**

Rasheem Richardson and Khalil Williams appeal from judgments entered in the United States District Court for the Southern District of New York convicting them, following a jury trial, of conspiring and attempting to commit a Hobbs Act robbery and of using, carrying, and possessing a firearm during and in relation to, and in furtherance of, the robbery conspiracy. Williams was also convicted of unlawful possession of a firearm after having been convicted of a felony. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**[1]** The defendants challenge the denial of their motion to suppress physical evidence obtained as a result of their allegedly unlawful arrests and the subsequent search of the car (a Honda Accord) in which they were found by police. We

2

review a district court's ruling on a motion to suppress for clear error as to factual findings, viewing the evidence in the light most favorable to the government, and <u>de novo</u> as to questions of law. <u>United States v. Brown</u>, 52 F.3d 415, 420 (2d Cir. 1995).

A warrantless arrest is permissible under the Fourth Amendment if "the police have probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." <u>United States v. Cruz</u>, 834 F.2d 47, 50 (2d Cir. 1987). Probable cause exists if "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." <u>Id.</u> (alterations in original) (quoting <u>Brinegar v. United States</u>, 338 U.S. 160, 175-76 (1949)) (internal quotation marks omitted). A readily mobile automobile may be searched without first obtaining a warrant provided that there is probable cause to believe that the vehicle contains contraband or other evidence of a crime. <u>See</u> <u>United States v. Gaskin</u>, 364 F.3d 438, 456 (2d Cir. 2004). Probable cause in this context "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." <u>Id.</u> at 457 (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). In addition, an automobile may be searched incident to the arrest of an occupant even after the arrestee has been secured and cannot access the interior of the vehicle as long as "it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." <u>Arizona v. Gant</u>, 129 S. Ct. 1710, 1714 (2009).

Both the defendants' arrests as well as the search of the car were supported by probable cause. The police relied on a tip from a confidential informant, who had provided reliable information in the past, that multiple armed men in a dark colored car were planning to rob Media Plaza, an electronics store, on the night defendants were arrested nearby (or on the following night). <u>See</u> <u>Gates</u>, 462 U.S. at 230 (holding that an informant's "veracity, reliability and basis of knowledge" are relevant to a determination of whether a tip establishes probable cause under a totality-of-the-circumstances analysis (internal quotation marks

omitted)).  The defendants argue that the informant had never provided information regarding a robbery, but that is plainly irrelevant to his veracity or reliability.  The informant had provided information about violent and non-violent crimes that contributed to the convictions of more than twenty people.  An informant need not have provided tips in factually identical cases to demonstrate reliability.  The reliability of the tip is also not impaired by the informant's failure to indicate his source of information.  See Draper v. United States, 358 U.S. 307, 309-12 (1959) (finding probable cause to arrest the defendant based on a tip that he would be returning to Chicago carrying drugs where the informant did not explain his basis of knowledge but had previously provided reliable information and the police corroborated the informant's description of the defendant's clothes, the color of the bag he would be carrying, his physical appearance, and his gait).  Moreover, before arresting the defendants, the police independently corroborated a number of the elements of the informant's tip: They identified the dark gray Honda; co-defendant Robert Anthony Gonzalez came out of the back seat, indicating that there was at least one other person in the car; and the car was parked across the street from Media Plaza on one of the two nights the robbery was predicted to take place.

The observations of the police during their surveillance of Media Plaza reinforced the reasonableness of their belief that the car contained evidence of a crime and that the defendants were engaged in criminal activity. Gonzalez was observed walking near Media Plaza and peering at the store; such behavior is consistent with casing Media Plaza in anticipation of robbing it.  The Honda moved from one parking space to another that was closer to the store, a maneuver suggesting that the defendants may have been preparing to rob Media Plaza, and sought proximity to facilitate a quicker entry and exit.  When Gonzalez made eye contact with Detective John Badyna, who was crouched in the driver's seat of an unmarked police car, Gonzalez immediately changed directions and walked away from the police car.  "Headlong flight . . . is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."  Illinois v. Wardlow, 528 U.S. 119, 124 (2000).  Gonzalez was also wearing latex

4

gloves, and Detective Badyna noticed that his hands looked "rubber-like." Given the informant's tip that multiple armed men were planning to rob Media Plaza that night, it was reasonable for the police to infer a common enterprise among Gonzalez and the unidentified persons remaining in the Honda (including defendants Richardson and Williams). Based on Gonzalez's behavior at the scene of the suspected robbery, the tip from an informant with a history of providing accurate information to the police (and corroboration by the police of significant aspects of that tip), and the apparent connection between Gonzalez and the occupants of the car, there was probable cause to believe that defendants Richardson and Williams were in the process of attempting to rob Media Plaza and, therefore, to arrest them.

The same information that established probable cause to arrest the defendants also established probable cause to believe that the Honda contained evidence of the planned robbery. In particular, there was a fair probability that the firearms that the informant's tip suggested would be used in the robbery might be found in the car along with the other robbers (especially since no gun was found on Gonzalez). Because both the defendants' arrests and the subsequent search of the car were supported by probable cause, the district court did not err in denying defendants' motion to suppress.

**[2]** The defendants challenge their convictions under 18 U.S.C. § 924(c) on sufficiency grounds. We review de novo a sufficiency challenge and "'affirm if the evidence, when viewed in its totality and in the light most favorable to the government, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt.'" United States v. Yannotti, 541 F.3d 112, 120 (2d Cir. 2008) (quoting United States v. Geibel, 369 F.3d 682, 689 (2d Cir. 2004)).

Section 924(c) provides for an additional term of imprisonment for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A). The district court instructed the jury on

5

three theories of liability: direct or constructive possession, aiding and abetting liability, and liability under a Pinkerton theory.  Because the evidence was sufficient to convict the defendants on a Pinkerton theory, we affirm on that basis.  See United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996).

Under the Pinkerton doctrine, "a conspirator 'can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes.'"  United States v. Romero, 897 F.2d 47, 51 (2d Cir. 1990) (quoting United States v. Bruno, 873 F.2d 555, 560 (2d Cir. 1989)).  The evidence introduced at trial was sufficient for a rational jury to conclude beyond a reasonable doubt that: (1) Williams and Richardson entered into a Hobbs Act conspiracy with co-defendants Mark Franco and Gonzalez to rob Media Plaza, (2) the agreement contemplated the use of two armed shooters, and (3) Franco possessed a .45-caliber pistol to be used in the robbery, which he concealed under the floor mat of the driver's side of the Honda.  Franco's possession of the gun to be used in the robbery was thus both in furtherance of the robbery conspiracy and entirely foreseeable; there was therefore sufficient evidence to convict defendants Williams and Richardson of Franco's substantive Section 924(c) offense.[1]

[3] Richardson also argues that there was insufficient evidence of attempted robbery.  To be guilty of attempt, a defendant must have (1) intended to commit the crime and (2) "engaged in conduct amounting to a 'substantial step' towards the commission of the crime."  United States v. Martinez, 775 F.2d 31, 35 (2d Cir. 1985).  A substantial step requires "something more than mere preparation, yet may

---

[1] Because Richardson's argument concerning the duplicitousness of Count Three of the indictment has been waived, we do not consider it.  See Fed. R. Crim. P. 12(b)(3)(B) (a motion alleging a defect in the indictment must be raised before trial); United States v. Berardi, 629 F.2d 723, 729 (2d Cir. 1980) (an objection that an indictment is duplicitous is "generally deemed to be waived if not properly raised before trial").

be less than the last act necessary before the actual commission of the substantive crime." Id. (quoting United States v. Manley, 632 F.2d 978, 987-88 (2d Cir. 1980)). The trial evidence, including Franco's testimony and the physical evidence obtained at the crime scene, established that at the time they were arrested the defendants (1) intended to rob Media Plaza, (2) were in possession of the tools necessary to do so (including guns, latex gloves, duct tape, and ski masks), and (3) had arrived at the scene of the planned robbery. The evidence also showed that the defendants and their co-conspirators had cased Media Plaza; indeed, by the time the defendants were arrested Gonzalez had exited the car twice to scope out the area. Moreover, Gonzalez had already put on latex gloves, from which the jury could reasonably infer that the robbery was imminent. Defendants' reconnoitering at the scene of the contemplated crime while in possession of paraphernalia which, under the circumstances, could serve no lawful purpose (including a real firearm, a starter pistol, and ski masks) constitutes a substantial step, and amply corroborates their criminal purpose. See United States v. Jackson, 560 F.2d 112, 120-21 (2d Cir. 1977). Therefore, the evidence was sufficient to convict the defendants of attempted robbery.

**[4]** Richardson also challenges the sufficiency of the evidence of the requisite effect on interstate commerce to sustain defendants' Hobbs Act convictions. "In a Hobbs Act prosecution, proof that 'commerce [wa]s affected is critical since the Federal Government's jurisdiction of this crime rests only on that inference.'" United States v. Elias, 285 F.3d 183, 188 (2d Cir. 2002) (alteration in original)(quoting Stirone v. United States, 361 U.S. 212, 218 (1960)). "At the same time, it is well established that the burden of proving a nexus to interstate commerce is minimal" and a "very slight effect on interstate commerce" is sufficient. Id. The interstate commerce element of a Hobbs Act offense is satisfied if the robbery involves a store or business that sells products that are produced in another state or country. See id. at 188-89; United States v. Mapp, 170 F.3d 328, 336 n.13 (2d Cir. 1999).

The government called several witnesses at trial who testified that they had seen Samsung and Sharp televisions for sale at Media Plaza, including Franco who testified that

he had seen a Sharp Aquos television, which he intended to steal, shortly before the arrest.  The defendants stipulated to the fact that neither brand of television had ever been manufactured in New York.  Richardson's argument that the Sharp and Samsung televisions sold by Media Plaza may have been counterfeits is sheer speculation.  The jury could reasonably infer that Media Plaza stocked foreign-made televisions during the period in question.  Viewing the evidence in the light most favorable to the government, there was sufficient evidence of the necessary de minimis effect on interstate commerce to sustain the defendants' Hobbs Act convictions.

**[5]**  Finally, Williams argues that the district court failed to provide an adequate jury instruction on the need to corroborate Franco's testimony as an accomplice and cooperating witness.  A challenge to jury instructions is reviewed de novo and we reverse only where all the instructions, taken as a whole, prejudiced the defendant. United States v. Bok, 156 F.3d 157, 160 (2d Cir. 1998). Where, as here, a defendant fails to object to the district court's jury instructions at trial, those instructions are reviewed for plain error.  United States v. Middlemiss, 217 F.3d 112, 121 (2d Cir. 2000).

In instructing a jury as to the possible motivations of a cooperating witness, "district courts need only fairly put the issue of a cooperating witness's possible motivations to the jury for its consideration and need not over-emphasize the obvious--that cooperators may have an interest in currying favor with the prosecutor that could affect the substance of their testimony."  United States v. Vaughn, 430 F.3d 518, 523-24 (2d Cir. 2005).  "As long as district courts intelligibly identify a cooperating witness's possible motivations for the jury's consideration, the cautionary charge given to the jury regarding a cooperating witness's testimony is sufficient."  Id.

The district court instructed the jury to scrutinize the testimony of each witness, to consider whether the witness has a relationship with the government that might affect his or her testimony, and to particularly scrutinize the testimony of cooperating witnesses.  This was sufficient to flag Franco's possible motivations for the jury's

8

consideration.  Moreover, the defendants challenged Franco's credibility on cross examination and during summations.  So the defendants cannot show that any alleged inadequacies in the jury instruction "affected [their] substantial rights" as they must to prove plain error.  United States v. Marcus, 130 S. Ct. 2159, 2164 (2010); see also United States v. Velez, 652 F.2d 258, 261 n.5 (2d Cir. 1981) (noting that the district court's failure to charge the jury regarding the credibility of a cooperating witness was not prejudicial because "defense counsel forcefully argued [the witness's] lack of credibility in his summation").

We have considered the defendants' remaining arguments and find them to be without merit.  For the foregoing reasons, the judgments of the district court are hereby **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK